AO 91 (Rev. 11/11) Criminal Complaint	AUSA Sean K. Driscoll (312) 469-6151

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN MADDALENI | CASE NUMBER:<br><br>**15** ⬛ **106**<br><br>15 cr 106 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about March 4, 2015, at Wheaton, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | attempted to knowingly and intentionally possess with intent to distribute a controlled substance, namely, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

KELLY GATES
Special Agent
U.S. Postal Inspection Service

Sworn to before me and signed in my presence.

Date: March 5, 2015

Judge's signature

City and state: Chicago, Illinois

YOUNG B. KIM, U.S. Magistrate Judge
*Printed name and Title*

**FILED**

MAR 0 5 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF ILLINOIS | ss |

### AFFIDAVIT

I, KELLY GATES, being duly sworn, state as follows:

1. I am a Postal Inspector with the U.S. Postal Inspection Service (USPIS). I have been so employed for approximately nine years and am currently assigned to the Prohibited Mail-Narcotics Team.

2. As part of my duties as a USPIS Postal Inspector, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal controlled substance laws.

3. I have received training by the USPIS in the investigation of controlled substances or proceeds/payments being transported through the United States mail. I have also received training in narcotics investigations and various methods by which drug dealers conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws, including investigations that have resulted in the issuance of search warrants.

4. This affidavit is submitted in support of a criminal complaint alleging that BRIAN MADDALENI attempted to knowingly and intentionally possess with intent to distribute a controlled substance, namely, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II

Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

5. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts.

6. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging MADDALENI with attempting to possess with intent to distribute a controlled substance, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed violations of Title 21, United States Code, Section 846.

## FACTS SUPPORTING PROBABLE CAUSE

7. On Tuesday March 3, 2015, I conducted a review of Priority Mail Express parcels at the J.T. Weeker International Service Center, located at 11560 Irving Park Road, Chicago, IL 60666. While reviewing parcels, I observed a Priority Mail Express package with tracking number EK457150476US (the "Subject Parcel"). The Subject Parcel is a brown cardboard box measuring approximately ten inches by ten inches by ten inches, weighing approximately eight pounds and thirteen ounces, and bearing $78.70 in postage.

8. The Subject Parcel originated from the Scottsdale, Arizona 85251 post office. The parcel was large, and it originated from what I know to be, based on my

training and experience, a narcotics source city: Scottsdale, Arizona. Due to the characteristics of the parcel, I began reviewing available USPIS databases to verify the sender address and addressee listed on the mailing label.

9. The Subject Parcel was addressed to 0N656 Pleasant Hill Rd, Wheaton, Illinois 60187 (the "Subject Premises"), with a return address of Troy Johnson, 5895 Camelback Rd., Scottsdale, AZ 85250. According to available USPIS databases, the return address of 5895 Camelback Rd. is a valid address; however, the name "Troy Johnson" is not a name associated with that address. (Based on my training and experience, I know that narcotics traffickers may utilize fictitious sender names on mailing labels to avoid law enforcement detection.) Furthermore, USPIS databases indicated that the delivery address of 0N656 Pleasant Hill Rd. is a valid mailing address; however, the name "Star Inc" is not associated with the address. Nor could I find any record of a business named "Star Inc" located at that address. (Based on my training and experience, I know that narcotics traffickers may utilize fictitious addressee names and/or businesses on mailing labels to avoid law enforcement detection.) Due to these characteristics of the parcel, I requested a canine review for the Subject Parcel.

10. On Tuesday March 3, 2015, Customs and Border Patrol K-9 Officer Hector Acuna was contacted and met with Postal Inspectors at the J.T. Weeker International Service in Chicago. Officer Acuna was accompanied by his narcotics trained canine "Kajo." The Subject Parcel was placed in an area known not to have been previously contaminated by a narcotic odor. Officer Acuna had "Kajo" search

this area. Upon arriving at the package, Officer Acuna advised that canine "Kajo" reacted in a positive manner (by sitting), indicating the presence of a narcotic odor.

11. On March 3, 2015, the Honorable Young B. Kim, United States Magistrate Judge for the Northern District of Illinois, issued a search warrant (15-M-128) authorizing a search of the Subject Parcel.

12. Upon executing the search warrant, law enforcement agents recovered one bundle of a white crystal substance from inside of the Subject Parcel. A representative sample of the white crystal substance was field-tested and produced a positive result for methamphetamines. The net weight of the substance was 435 grams. Based on my training and experience, and conversations with other experienced law enforcement agents, I know that drugs of the quantity found in the Subject Parcel are typically intended for distribution.

13. As part of a continuing investigation, law enforcement agents of the USPIS planned to make a controlled delivery of the Subject Parcel to the Subject Premises. On March 4, 2015, the Honorable Young B. Kim issued an anticipatory search warrant (15-M-130) authorizing placement of an electronic transmitter into the Subject Parcel, as well as a search of the Subject Premises, contingent upon the delivery of the Subject Parcel to the Subject Premises.

14. On or about March 4, 2015, law enforcement agents of the USPIS placed a transmitter in the Subject Parcel that would enable law enforcement agents to determine when the Subject Parcel is opened, as well as its location via

GPS.[1] USPIS personnel then rewrapped the Subject Parcel to give the appearance that it had not been opened. The white crystal substance containing methamphetamines was not placed back in the Subject Parcel; instead, a decoy substance was inserted in its place.

15. On March 4, 2015 at approximately 11:46 a.m., a law enforcement agent, wearing a U.S. Postal Service letter carrier uniform, delivered the Subject Parcel to the Subject Premises. According to that agent, he knocked on the door of the Subject Premises, which was answered by an adult male, who was later identified as BRIAN MADDALENI. The agent (posing as a letter carrier) stated that he had a package for "Star Inc," to which MADDALENI replied "Yes that is for me." The agent then asked MADDALENI to sign for the package, and he did so, signing the name "John Maddaleni." The agent asked MADDALENI to repeat the name that he signed, to which MADDALENI replied "John Maddaleni." The agent then gave MADDALENI the Subject Parcel, which MADDALENI brought inside of the Subject Premises.

16. Following the controlled delivery, UPSIS agents conducted surveillance of the Subject Premises and monitored the transmitter device in the Subject Parcel. Surveillance agents did not observe anyone enter or leave the residence. At approximately 1:47 p.m., USPIS inspectors monitoring the

---

[1] This transmitter emits an electronic signal that can be located by a receiver possessed by the law enforcement agents. The transmitter and locating receiver can monitor whether the package has been opened, but cannot transmit or record voice communication or acquire oral communication.

transmitter detected a signal which indicated that the Subject Parcel had been opened.

17. Pursuant to the warrant (15-M-130), law enforcement agents from USPIS then executed a search of the Subject Premises at approximately 1:48 p.m. Inside of the Subject Premises, agents identified MADDALENI and two other individuals. Based on his appearance, MADDALENI was identified by agents as the individual who answered the door and accepted the Subject Parcel earlier that day.

18. When the search warrant was executed, USPIS personnel found MADDALENI in a room of the Subject Premises he later identified as his bedroom. In that room with MADDALENI was the Subject Parcel, which had been opened, and its contents removed from the box.

19. After agents arrested MADDALENI, he was transported to a USPIS facility for questioning. There, MADDALENI was read his *Miranda* rights, executed a written waiver of his rights, and agreed to speak with USPIS inspectors. The interview was audio recorded.

20. During an interview with USPIS inspectors, MADDALENI, among other things, stated to law enforcement officers that:

    a. His name was Brian Maddaleni;

    b. He lived in the Subject Premises for approximately six years;

    c. The Subject Parcel belonged to him;

    d. He opened the Subject Parcel in his bedroom;

e. He ordered the methamphetamine in the Subject Parcel from a supplier in Arizona;

f. He previously ordered approximately three or four shipments of methamphetamine by mail from the same supplier;

g. From those prior shipments, he took some of the methamphetamine for personal use and sold the remainder in ounce quantities for $600 per ounce.

21. Among other items found in the Subject Premises during the search were the following:

a. Several scales (found in MADDALENI's bedroom);

b. Small plastic bags (found in MADDALENI's bedroom);

c. Approximately $3,175 cash (found in MADDALENI's bedroom);

d. Interior and exterior security cameras;

e. Another Priority Mail Express package, dated February 13, 2015, and addressed to "Star Inc"; and

f. Assorted narcotics paraphernalia, namely glass pipes, and what appeared to be controlled substances, including suspected cannabis, LSD, and pills with unidentified markings. Agents did not field test these suspected controlled substances.

22. Based on my training and experience, I know that scales and small plastic bags are frequently used in narcotics distribution to weigh and package

controlled substances for resale. Furthermore, I know that large quantities of cash and security systems are often found at locations where narcotics are distributed.

## CONCLUSION

23. Based on the above information, I respectfully submit that there is probable cause to believe that that BRIAN MADDALENI violated Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NOT.

_____
KELLY GATES
Postal Inspector
U.S. Postal Inspection Service

SUBSCRIBED AND SWORN
before me on March 5, 2015

_____
YOUNG B. KIM
United States Magistrate Judge